THE STATE, EX REL. COPLAND, APPELLANT, *v.* CITY OF TOLEDO ET AL., APPELLEES.

THE STATE, EX REL. THE RUGBY REALTY CO., APPELLANT, *v.* CITY OF TOLEDO ET AL., APPELLEES.

(Nos. 4050 and 4051—Decided December 18, 1944.)

*Mr. Gerald P. Openlander* and *Messrs. Geer, Lane & Downing*, for appellants.

*Mr. Joseph Nathanson*, director of law, and *Mr. Slater Gibson*, for appellees.

STUART, J.  By stipulation of the parties and with the consent of the court these two cases, involving similar facts and presenting the same questions of law, were argued and submitted together.  They are actions in mandamus here on appeal on questions of law from the judgment of the Court of Common Pleas denying the writs and dismissing relators' petitions.

The relators are each the owner of a tract of land in the city of Toledo adjoining and abutting upon a strip

of land which is about ten miles in length and approximately 135 feet wide extending from Erie street in the city of Toledo to the village of Maumee in Lucas county, Ohio, and in which the state of Ohio many years ago had acquired the fee simple title and upon which it had constructed, maintained and operated the Miami and Erie Canal.

In the year 1923 the tract of land of the relator, The Rugby Realty Company, was platted into building lots and is designated and known as ''Hiett's Beverly Boulevard Addition,'' and in the year 1928 the tract of land of the relator, Howard Copland, was platted into building lots and is designated and known as ''Copland Woods.'' A series of lots in the southeast part of each plat abuts upon the northwest line of the Miami and Erie Canal property, which is shown and designated on each plat as ''The Concourse,'' but as to which canal property relators had no title.

In each petition one of the lots in said series, respectively, is described by number and it is as to such lot that each of the relators respectively prays ''that the action of the council of the city of Toledo in passing the ordinances or resolutions providing that no curb cuts should be granted or allowed into the Canal Boulevard may be declared to be discriminatory, arbitrary, confiscatory and invalid, and that the defendants may be required to issue to the plaintiff permission to construct a curb cut in front of said lot * * * and for all other and further relief to which the plaintiff may be entitled in the premises.''

On January 22, 1920, the General Assembly of the state of Ohio passed an act abandoning that portion of the Miami and Erie Canal in Lucas county, Ohio, and providing for the lease and sale of the property to the city of Toledo.

July 24, 1922, the council of the city of Toledo enacted an ordinance for the issuance of bonds ''for the

purpose of purchasing for a park and boulevard'' the abandoned portion of the canal, and on October 23, 1922, enacted an ordinance appropriating a part of the proceeds of the bonds for the purpose of purchasing such canal property from the state of Ohio.

On December 29, 1922, the state of Ohio, by a proper deed, sold and conveyed the Miami and Erie Canal property to the city of Toledo and provided therein that the property was to be used for park and boulevard purposes.

On October 23, 1933, an ordinance was passed by the council of the city of Toledo ''dedicating for boulevard purposes that portion of the abandoned bed of the Miami and Erie Canal'' here involved, and by subsequent legislation prohibited the cutting of the curb therein without permission. An ordinance of the city prohibits driving over a curb.

In 1939 the city constructed therein two parallel lanes of pavement, each 36 feet wide, separated by a strip of land 40 feet wide, the northwesterly lane being separated from the southeasterly line of relators' lands by a strip of land exceeding 16 feet in width. No special assessment for this improvement was levied upon abutting real estate, the cost thereof being defrayed by assessment upon the general tax duplicate of Lucas county. Relators' lots are not contiguous to and do not abut upon the pavement and to have access to the nearest lane of pavement from the designated lots, it would be necessary to cross this intervening strip of land. Merely cutting the curb would not afford the relators access to the pavement.

Streets, highways and similar public ways are established for the use of the general public and for the benefit of adjoining and abutting land owners who, by virtue of such ownership have the legal right to ingress and egress thereto and therefrom.

There is a distinction between a "boulevard" and the usual and ordinary street, road or highway. Webster defines a "boulevard" as:

"2. A broad avenue in or around a city, esp. one decoratively laid out with trees, belts of turf, etc.

"3. An improved avenue or thoroughfare, esp. in cities for pleasure vehicles, sometimes exclusive; often one which is a through way."

"The term 'boulevard', anciently used to designate the flat top of a bulwark or rampart around a city, now means a street constructed with parklike features, a wide street, or a street encircling a town, one with sides or center for shade trees, flowers, seats, etc., and not used for heavy teaming." See 5 Words and Phrases, 724, where many similar judicial definitions are quoted.

The character of this public land must be determined from the intention and plans of the governing authority and the use to which it has been put.

The city, by its legislation and its acts, has designated and dealt with this canal property as a "boulevard" in contradistinction to the usual street and highway.

It is obvious that the city cannot maintain ornamental spaces adjoining the pavement as it has the legal right to do in character with its declared intention to dedicate and use this canal property as a "boulevard," if public or private ways across such spaces may be established other than as designated by it to effectuate its plan.

Under the facts, the relators have no greater right in these public lands than that enjoyed by the general public. The city is not required to construct a way across the intervening strip, nor can it be compelled to permit the relators to do so.

The judgments of the trial court are therefore affirmed.

*Judgments affirmed.*

LLOYD and CARPENTER, JJ., concur.