F. A. REQUARTH CO., APPELLEE, *v.* THE STATE OF OHIO ET AL., APPELLANTS.

(No. 73-721—Decided April 24, 1974.)

*Messrs. Smith and Schnacke, Mr. Paul E. Lacouture, Mr. James J. Gilvary* and *Messrs. Shively, Shively & Shively,* for appellee.

*Mr. William J. Brown*, attorney general, *Mr. Charles S. Rawlings, Mr. James W. Drake*, city attorney, and *Mr. Edward M. Taylor, Jr.*, for appellants.

HERBERT, J.  Both lower courts concluded that the fee simple title to the lands in question had remained in the Backus trustees, or their heirs, and that appellee obtained title to the properties by adverse possession.  We agree with this resolution of the dispute and affirm the Court of Appeals' judgment.

With respect to the realty consisting of the Basin Extension Canal, the state argues that the enactment of the special Act in 1849, as well as the occupancy and use by the state of the property as a canal, constituted an appropriation of the property pursuant to the terms of an act passed by the General Assembly in 1825, 23 Ohio Laws 50, and that a fee simple title to the realty was thereby vested in the state.

The 1825 Act represented the intial legislative authorization for the construction of canals in Ohio.  Section 8 of that Act[1] granted to the seven-man canal commission created by the Act broad powers of appropriation to obtain the ''lands, waters, streams, and materials, necessary for the prosecution of the improvements intended by this Act.''  It was provided that after appropriation, appraisal, and compensation to the owners of the lands taken, the fee simple

---

[1]Section 8 of the 1825 Act, 23 Ohio Laws 56, in pertinent part, provided:

"That it shall and may be lawful for the said canal commissioners, and each of them by themselves, and by any and every superintendent, agent, and engineer employed by them to enter upon, and take possession of, and use all and singular any lands, waters, streams, and materials, necessary for the prosecution of the improvements intended by this act; and to make all such canals, feeders, dykes, locks, dams and other works and devices as they may think proper for making said improvement * * * in case any lands, waters, streams or materials, taken and appropriated for any of the purposes aforesaid, shall not be given or granted to this state, it shall be the duty of the canal commissioners * * * to appoint * * * appraisers, * * * to make a just and equitable estimate and appraisal of the loss or damage, if any, over and above the benefit and advantage to the respective owners * * * the fee simple of the premises so appropriated shall be vested in this state * * *."

title to the appropriated property was to be vested in the state. In *Ohio, ex rel.*, v. *Railway Company* (1895), 53 Ohio St. 189, 41 N. E. 205, it was held that under the terms of Section 8, mere entry and use by the state of land for canal purposes vested a fee simple title to the lands in the state.

However, the *Railway Company* decision does not settle the issue of title in the present case. In Section 2 of the 1825 Act, the scope of the Section 8 powers was clearly limited in application to the appropriation of lands, waters, streams and materials for the construction of but two canals. Section 2, in pertinent part, provided:

"That the said canal commissioners are hereby authorized and empowered in behalf of this state, * * * to commence and prosecute the making of * * * [a canal later called the Ohio and Erie Canal], and likewise a navigable canal on so much of the Maumee and Miami line, as lies between Cincinnati and Mad river, at or near Dayton."

From Section 2, it is clear that the 1825 Act contemplated that the appropriation powers authorized by Section 8 were limited in application to the acquisition of lands in pursuance of the construction of Section 2 canals. The construction of the Basin Extension Canal was not begun until more than 15 years after the enactment of the 1825 Act and until the construction of the canals authorized by that Act was completed. The Basin Extension Canal was not a Section 2 canal within the contemplation of the Act.

The limited applicability of the 1825 Act is evidenced as well by the language of Sections 9, 10, and 11 of the Act. 23 Ohio Laws 57. Section 10 is particularly instructive:

"That the said canal commissioners * * * are hereby authorized to make application in behalf of this state * * * to the proprietors of lands through or near which the *said canals, or either of them*, may be proposed to pass * * * for cessions, grants, or donations of land * * * for the purpose of aiding in the *construction of both, or either of said canals* * * *." (Emphasis added.)

The 1825 Act was of a special and limited nature. Its intent was the creation of a canal commission which would administer the construction of the two canals specified in

Section 2 of the Act. The appropriation powers granted in Section 8 in pursuance of that intent have no application to a canal, such as the Basin Extension Canal, which was completely constructed by the contiguous landowners, at their own expense, prior to its grant to the state, and which was adopted into the state canal system by special legislation subsequent to the 1825 Act. The holding of *Railway Company, supra,* that the state acquires a fee simple title to land by the mere entry, use, and occupation of such property for canal purposes pursuant to Section 8, is limited to situations where the state enters the land for the purpose of construction of Section 2 canals. See *State* v. *Snook* (1895), 53 Ohio St. 521, 42 N. E. 544.

Section 8 of the 1825 Act was not the exclusive means by which the state assumed control over lands for the purposes of constructing or operating canals. See, *e. g., Corwin* v. *Cowan* (1861), 12 Ohio St. 629. When the state did not acquire its interest in real property for use as a canal pursuant to the terms of Section 8, the nature and extent of such interest must be determined from the particular facts and circumstances of the acquisition. Mere adoption of a canal as part of the state canal system did not necessarily vest a fee simple title to the land comprising the canal in the state.

The facts in the present case are similar to those in *Corwin* v. *Cowan, supra.* In *Corwin,* a private canal company had acquired easements and partially constructed a canal. The General Assembly then passed legislation by which the state became the owner of the canal and the canal was placed under the charge of the board of public works; it was declared "an appendage to and part and parcel of the Miami Canal." The court held that the state did not acquire a fee simple title to the canal, but took only the easement possessed by the canal company. Upon abandonment of the canal by the state, the easement terminated and the right to the possession of the land constituting the canal reverted to the original owners.

In the instant case, nothing in the 1849 petition of the landowners, nor in the consequent special statute enacted the same year, indicates that the landowners intended to

offer, or that the state accepted, more than an easement in the Basin Extension Canal lands for use as a canal. In their petition, the landowners stated that they were willing to relinquish any claims they had for the cost of construction of the canal, in return for a declaration that the canal was a state work and eligible for the benefits of being under the care of the board of public works.[2] The resultant 1849 Act, 47 Ohio Laws 360, as did the statute in *Corwin, supra*, simply provided that the canal was a state work and subject to all laws applicable to the navigation and management of Ohio canals,[3] and that it was "a part of the Miami Canal." There was no provision for the appropriation or transfer of fee title in the canal to the state.[4]

By virtue of the 1849 Act, the state accepted an easement over the land then being used as a canal. This easement terminated in 1925, when, by legislation, the state abandoned its canal lands for canal purposes. 111 Ohio Laws 208. At that time, the right to possession of the lands comprising the Basin Extension Canal reverted to the holders of the fee simple title, *i. e.*, the trustees of Backus. Therefore, the state had no interest in these lands which it could lease to the city of Dayton, and the lease between the state and the city is of no effect.

It appears that, at least since 1936, appellee has been in continuous, open, notorious, exclusive and adverse pos-

---

[2] Specifically, "that repairs may be made upon it when needed, and that it be protected as the other canals of the state are from depredations." The owners obviously were seeking the benefits of acts adopted in 1832, 30 Ohio Laws 17, and 1840, 38 Ohio Laws 87, providing, respectively, for the repair and improvement of state canals and for the regulation of traffic and collection of tolls on Ohio canals.

[3] In apparent reference to the Acts of 1832 and 1840. See footnote 2, *supra*.

[4] Contrast 53 Ohio Laws 197, enacted in 1856, by which the state adopted a portion of the Sandy and Beaver Canal as part of the public works of the state. Section 2 of that statute made specific provision for the transfer of title, as follows: "* * * the present owners thereof * * * shall make to the state of Ohio a good and sufficient title * * * provided that such portion of such canal shall be taken possession of and adopted only in case the present owners shall make a conveyance of the same to the state, by which the whole title of such owners may be conveyed."

session of the property constituting the Basin Extension Canal. Therefore, fee simple title to the property has vested in appellee and it is entitled to have that title registered in its name.

With respect to the parcel referred to as Sears Street Extended, the city contends that under *Miller* v. *Brookville* (1949), 152 Ohio St. 217, 89 N. E. 2d 85, the 1862 deeds to the city of Dayton from Wight conveyed the fee simple title to the city in the parcel. It is argued that since adverse possession does not lie against a municipality, the city still holds the fee title to the realty, notwithstanding appellee's uninterrupted possession of the land since 1909. However, deciding the effect of an adverse possession of realty titled in a municipality is not necessary to our resolution of this appeal.

As noted earlier, there is no transaction of record appearing subsequent to the acquisition of title to this parcel by the Backus trustees. Although Wight eventually acquired the fee title to lots 7502 and 7503, those lots form the east and west boundaries of the parcel, and Wight's deeds did not specifically include the property now known as Sears Street Extended. Therefore, Wight never possessed a title which he could pass in Sears Street Extended.

A grantor cannot pass to his grantee better title than he himself has. Wight, as a stranger to the title of Sears Street Extended, could pass no interest in the realty to his grantees.[5] There being no conveyance from them, the fee title to the realty remained in the Backus trustees.

Since at least 1909, there has been no public way on Sears Street Extended, appellee has maintained a gate to the south end of the strip and part of appellee's buildings

---

[5]Likewise, the deeds executed in 1897 and 1902 to appellee, derived from Wight, conveyed no interest in Sears Street Extended to appellee. Both the appellee and the city of Dayton have argued that their "wild deeds" have obtained validity by virtue of R. C. 5301.47 to R. C. 5301.56. However, the trial judge and the three judges of the Court of Appeals felt that those Code sections should not operate to cure deeds, the defectiveness of which derives from the instant circumstances. Because of the nature of this cause, we are not disposed to disturb their conclusion in that regard. Cf., Simes & Taylor, Model Title Standards, Section 4.10.

have occupied the property. These facts suffice to show that appellee has been in continuous, open, notorious, exclusive and adverse possession of Sears Street Extended since 1909. Therefore, fee simple title to the property has vested in appellee, and it is entitled to have that registered in its name, subject to the easements and lien found by the trial court.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'Neill, C. J., Corrigan, Stern, Celebrezze and W. Brown, JJ., concur.

P. Brown, J., dissents.