CIRCLE INVESTMENT CO., APPELLANT, *v.* CITY OF TOLEDO ET AL., APPELLEES.

(No. 7788—Decided April 18, 1975.)

Mr. *Willard Johnson*, for appellant.
Mr. *John A. DeVictor, Jr.*, for appellees.

POTTER, J.   Plaintiff, the appellant herein, is the owner of a tract of land, bounded on the westerly side by the northeasterly right of way line of the Ohio Turnpike; on the northerly side by the southeasterly line of the Anthony Wayne Trail (the abandoned Miami and Erie Canal); on the easterly side by the westerly right of way line of the Toledo Terminal Railroad and on the southerly side by the southerly right of way line of the abandoned Toledo-Maumee

Narrow Gauge Railroad Company. The only physical access to this property, zoned C-1 commercial, to the Toledo street and highway system is the Anthony Wayne Trail, a limited access highway.

The denial by the city of Toledo of such access precipitated this lawsuit. Plaintiff prayed for a judgment declaring that it had a right of access to its property from the Anthony Wayne Trail and that the commissioner of inspection be forced by a mandatory injunction to issue an appropriate building permit to plaintiff. The trial court considered the pleadings, stipulations of counsel, evidence, briefs and arguments of counsel and found that plaintiff did not have a right of access from the Anthony Wayne Trail, unless one should be granted by the Toledo city council. The request for a mandatory injunction was also denied.

From the judgment of the trial court plaintiff appealed, asserting the following assignments of error:

"Assignment of error number one. The judgment of the trial court is against the manifest weight of the evidence.

"Assignment of error number two. The trial court erred in admitting fragments of testimony from a previous case.

"Assignment of error number three. The trial court erred in misstating the issues of the case.

"Assignment of error number four. The court erred in finding to be true facts which were not in evidence in the case."

We find all the assignments of error not well taken for the reasons hereinafter set forth and, therefore, affirm the judgment of the Court of Common Pleas of Lucas County.

Plaintiff's argument in support of assignment of error 1 is, essentially, that its right of access has never been relinquished by it or its predecessor in title, or acquired in any way by the state of Ohio or the city of Toledo.

It is stipulated that the Anthony Wayne Trail is located on land formerly occupied by the bed, banks and towpath of the Miami and Erie Canal. A limited review of the history of the canal is necessary to determine the

rights of this abutting owner. Relative to the early history of the canal, see *McArthur* v. *Kelley* (1831), 5 Ohio Reports 140; *Maumee Valley Electric Co.* v. *Schlesinger* (S. D. Ohio 1928), 33 F. 2d 318.

The portion of the canal land under consideration was originally part of and known as the Wabash and Erie Canal, which was to link Lake Erie with the Wabash River. It became part of the Miami extension and was part of the original long-term plan of canal construction envisioned in the canal commissioner's report to the Ohio legislature at the 1824-1825 session. See Scheiber, "Ohio Canal Era," page 99. An act of the Ohio General Assembly, dated February 4, 1825, 23 Ohio Laws 50,[1] is said to be the

[1]"Sec. 2. That the said canal commissioners are hereby authorized and empowered in behalf of this state, and on the credit of the fund hereby pledged to commence and prosecute the making of a navigable canal on the Muskingum and Scioto route, so called, from the Ohio river, at or near the mouth of the Scioto river by the way of the Licking summit and the Muskingum river to Lake Erie, commencing at the most eligible point on the Licking summit, and such intermediate point or points between said summit and Lake Erie, and said summit and the Scioto river, as in the opinion of said commissioners will best promote the interest of the state, and likewise a navigable canal on so much of the Maumee and Miami line, as lies between Cincinnati and Mad river, at or near Dayton."

"Sec. 8. That it shall and may be lawful for the said Canal Commissioners, and each of them by themselves, and by any and every Superintendent, Agent and Engineer, employed by them to enter upon, and take possession of, and use all and singular any lands, waters, streams, and materials, necessary for the prosecution of the improvements intended by this act; and to make all such canals, feeders, dykes, locks, dams, and other works and devices as they may think proper for making said improvements; doing nevertheless, no unnecessary damage; and that in case any lands, water, streams or materials, taken and appropriated for any of the purposes aforesaid, shall not be given or granted to this state, is (sic) shall be the duty of the Canal Commissioners, on application being made to them by the owner or owners of any such lands, waters, streams or materials, to appoint by writing not less than three nor more than five discreet disinterested persons as appraisers, who shall before they enter upon the duties of their appointment, severally take an oath or affirmation, before some person authorized to administer oaths, faithfully and impartially to perform the trust and duties required of them by this act, a certificate of which

initial legislative authority for the construction of canals in Ohio. See *F. A. Requarth Co.* v. *State* (1974), 38 Ohio St. 2d 77. The act of 1825 provided for the appropriation of property in fee simple. The act also was to produce an abstractor's nightmare for the mere act of occupation by the state under Section 8 for canal purposes was sufficient to convey title. There were no deeds or written evidence of conveyances and no records were required to be or were maintained for land occupied and thus appropriated, unless the landowner claimed damages within one year thereafter. Only for those segments of the canal where damages were claimed were there any early official records of the canal's location. As in the *Requarth* case, the provisions of this act alone do not resolve the problem in this case.

As the act indicates and as the *Requarth* case reiterates, Section 8 powers were then clearly limited to the construction of but two canals. The *Requarth* case gives but limited application of the Act of 1825.

The Miami and Erie Canal as then envisioned was to lie between Cincinnati and Mad River at or near Dayton,

---

oath or affirmation, shall be filed with the Secretary of the Canal Commissioners, and it shall be the duty of said appraisers, or a majority of them, to make a just and equitable estimate and appraisal of the loss or damage, if any over and above the benefit and advantage to the respective owners and proprietors, or parties interested in the premises, so required for the purposes aforesaid, and the said appraisers, or a majority of them, shall make regular entries of their determination and appraisal, with an apt and sufficient description of the several premises, appropriated for the purposes aforesaid, in a book, or books, to be provided and kept by the Canal Commissioners, and certify and sign their names to such entries and appraisal, and in like manner certify their determination as to those several premises which will suffer no damages, or will be benefited more than injured by, or in consequence of the works aforesaid, and the Canal Commissioners shall pay the damages so to be assessed and appraised, and the fee simple of the premises so appropriated shall be vested in this state: *Provided however*, that all such applications to the board of Canal Commissioners, for compensation for any lands, waters, streams, or materials so appropriated, shall be made within one year after such lands, waters, streams, or materials, shall have been taken possession of, by the said Commissioners, for the purposes aforesaid."

Ohio. This section of the canal was completed in January 1829. See Slocum, "History of the Maumee River Basin," page 599. But even under sharp prompting by the state of Indiana, approval of the Wabash and Erie Canal by the Ohio General Assembly was postponed until 1834. See 32 Ohio Laws 308, and 32 Ohio Laws 439.[2] The contract for the construction of the canal from the mouth of the Maumee River at Manhattan to the grand rapids was not awarded until the spring of 1837, see 1 Scribner, "Memoirs of Lucas County and Toledo," page 101. The canal was looked upon not only as a general advantage to the public, but as an accidental benefit to specific tracts. See *Cooper v. Williams* (1831), 4 Ohio Reports 253. Approval of the Wabash and Erie Canal produced a frenzied episode of land speculation with town lots in Toledo selling for $22 per foot. Scheiber, *supra* at 188. The canal was opened to traffic from Toledo to Fort Wayne, May 8, 1843. However, the first boat from Cincinnati did not arrive until June 27, 1845. The time required to traverse the canal from Cincinnati to Toledo was eventually reduced to four days and five nights and this was considered to be good time.

Construction of the canal was aided by grants from the federal government of lands for the canal situs and also of lands to be sold for revenue to aid in the construction. See Acts of Congress in Vol. IV, United States Statutes at Large, May 26, 1824, at page 47, March 2, 1827, at page 236, May 24, 1828, at page 305. Congress provided that the land was not to be sold for less than $2.50 per acre and, considering the fact that Northwest Ohio then had a population density of approximately 1.4 persons per square mile, the

---

[2]The preamble to 32 Ohio Laws 308 reads as follows: "An Act to authorize the locating and establishing of so much of the line of the Wabash and Erie Canal as lies within the State of Ohio, and to authorize the selection, location, sale, and application of the proceeds of the sales of its lands.

The preamble to 32 Ohio Laws 439 reads as follows: "Preamble and resolutions accepting from the State of Indiana, a relinquishment and conveyance of certain canal lands herein named, and agreeing to the terms and conditions of said relinquishment and conveyance."

apparent cavalier attitude towards conveyancing and acquisition of title may be understood. Title from the United States government was acquired in fee simple. 8 Ohio Jurisprudence 2d 359, Canals, Section 16; *Haynes* v. *Jones* (1915), 91 Ohio St. 197.

The record in the case *sub judice* is not clear as to how title eventually vested in the state of Ohio. The early case of *Carpenter* v. *State* (1861), 12 Ohio St. 457, illustrates the disregard for formality. See the syllabus as follows:

"1. The board of public works had power to appropriate the bank of Swan Creek, a navigable stream within the limits of this state, for the construction of a towpath, to be used in connection with the Wabash and Erie canal, for the navigation of boats.

"2. An act of appropriation by the board of public works, under the eighth section of the act of 1825 (2 Chase, 1475), *is not required to be evidenced by any writing or record, and may be shown by parol evidence.*" (Emphasis added.)

Another early case, *Malone* v. *Toledo* (1878), 34 Ohio St. 541, considered the title to a portion of the Manhattan branch of the canal,[3] and also held that it was appropriated in 1836 for canal purposes under the act of February 4, 1825. The state, in 1868, as stated in the *Malone* case, granted the property in question to the city for highway, sewerage and water purposes. The Supreme Court held that the state had acquired the entire interest, "or an absolute estate in fee," and it therefore followed that the title acquired by the city of Toledo embraced the whole estate.

3 Chase 1917, Statutes of Ohio (Chase 1835) records an

---

[3]The Manhattan branch was a product of the rivalry of the villages of Toledo, Maumee, Perrysburg and Manhattan. All had espoused the construction of the canal and all wanted to have the Lake Erie Terminus. The canal commissioners faced the problem fearlessly and forthrightly and constructed three termini with identical terminal locks and basins at Manhattan, Toledo and Maumee. The board agreed that all terminals would open for traffic simultaneously. (See Scheiber, page 121.)

The location of the Lake Erie Terminus also precipitated the short lived but well publicized Ohio-Michigan War.

act of the General Assembly passed February 13, 1832, to amend the act of February 4, 1825, with the apparent purpose to authorize canal commissioners to take for the use of the state any lands, waters, streams and materials necessary for the purpose of making repairs or for the improvement of the canals of this state. The value thereof or damages accruing were to be ascertained, determined and paid in the manner provided in the eighth section of the act to which the amendment was to be a part. While the *Carpenter* and *Malone* opinions do not refer to the amendment to the act of February 4, 1825, nevertheless they do rely on the former act as authority for the appropriation. 3 Chase 1917 may not be relevant to the facts in the *Requarth* case, *supra*, and was not cited therein.

While the record is silent, as well it might be, as to how the state of Ohio acquired title to the land abutting the property in question, the parties do not challenge the state's title. When the state appropriated this land for the canal system, or possibly acquired it from the United States government, and used it exclusively, openly and notoriously, title vested in the state in fee simple. See 8 Ohio Jurisprudence 2d 356, Canals, Section 15. *Haynes* v. *Jones,* *supra*. The General Assembly has by various acts reiterated that title taken was in fee simple. See Page's Ohio General Code Annotated Chapter 9, The Canals, for a history of said recitations. See also *State* v. *Griftner* (1899), 61 Ohio St. 201; *Ohio ex rel.,* v. *Railway Company* (1895), 53 Ohio St. 189; cf. *F. A. Requarth, supra.*

It is stipulated that the city of Toledo purchased the canal lands in question in 1920 from the state of Ohio and that the conveyance stated that the property was for park and boulevard purposes. The fact is that the General Assembly passed an act (108 Ohio Laws 1138) authorizing the purchase in 1920, and the city purchased the same for $300,000 in 1922. The canal land purchased extended from outlet lock No. 52 in the city of Toledo near the juncture of Swan Creek and the Maumee River and extended to a point below the Maumee Side Cut near Maumee, Ohio. In 1953, Maumee accepted a conveyance for the portion of the

canal lands in question for highway, boulevard and park purposes and the highway thereon maintained as a limited access highway, or freeway, as defined by the laws of the state of Ohio. However, in 1960, as a result of a boundary adjustment between the city of Toledo and Maumee, the subject property was annexed to Toledo. The various conveyances were not less than a conveyance of the fee and certainly were not for the benefit of any of the plaintiff's predecessors in title.

Plaintiff claims a right of ingress and egress but, however the state acquired title, the right of access to the canal land never existed in plaintiff's predecessors or in plaintiff. The canal system was only accessible at certain toll points and in this regard abutting owners had no greater rights than the general public. See *Chatfield* v. *Cincinnati* (1876), 7 Ohio Dec. (Rep.) 111; 8 Ohio Jurisprudence 2d 348, Canals, Section 3. While the canal ride was acclaimed to be "the smoothest ride known to man" it was not a free ride. See Section 7 of the Act of February 4, 1825, providing for the establishment of reasonable tolls. Fines and penalties were later prescribed for the unlawful use of the canal or the towpath. See 24 Ohio Laws 47, January 31, 1826. It was not a public highway in the sense that it was available to all without charge.

The change in use of this public property from a canal to a highway or a boulevard did not cause new rights to ripen in abutting owners. Abandonment of the canal by the state when the interest in the canal land was one in fee simple did not cause the title to revert to the grantor or the successors in title. The title remained in the state subject to proper conveyance. See 8 Ohio Jurisprudence 2d 369 and 377, Canals, Sections 27 and 34.

The state of Ohio, and now the city of Toledo, have the same rights as any other titleholder and may deny access to abutting owners. See *Masheter* v. *Diver* (1969), 20 Ohio St. 2d 74, where it is stated at paragraph 3 of the syllabus:

"Where the Director of Highways appropriates an easement in land for highway purposes under Section 5519.-01, Revised Code, the right of access to the abutting prop-

erty is not taken (*State, ex rel. Merritt*, v. *Linzell*, 163 Ohio St. 97). However, where the Director of Highways appropriates lands for highway purposes under Section 5519.01 and 5501.01 [5501.11], Revised Code, and the Resolution and Finding filed by the Director indicates that such lands are to be taken 'in fee simple' and designates the interests taken as 'all right, title and interest,' without reserving any rights to the landowner, that appropriating authority takes all rights and interest in the land, including right of access to the abutting land."

The following statement taken from *Dir. of Hwys.* v. *Kramer* (1970), 23 Ohio App. 2d 219 is applicable to the instant case:

"An owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public but also a private right or easement for the purpose of ingress and egress to and from his property, unless an appropriating body has acquired a fee simple title along with 'all right, title and interest' to the land taken, and the abutting landowner, *who previously had the right of ingress and egress to the highway,* is compensated for his loss." (Emphasis added.) Paragraph 1 of the syllabus.

R. C. 717.04 establishes a municipality's right to designate certain highways limited access highways. The Anthony Wayne Trail was properly designated as limited access by the city of Toledo and the Toledo city council did not abuse its discretion by refusing to grant access to appellant's property. Appellant's first assignment of error, therefore, is not well taken.

Assignment of error 2 refers to evidence admitted relative to *In re Appropriation by the Ohio Turnpike Commission of Property of Cooley Ellis,* Court of Common Pleas of Lucas County, No. 177828. The evidence was of assistance to the trial court to show the history of the subject property. The original plot consisting of 45 acres was bisected by the Ohio Turnpike. This left the subject property of 14.73 acres abutting on the Anthony Wayne Trail

and the balance abutting on Detroit Avenue. Compensation was paid for the take and for damages to the residue. This case and the case of *State, ex rel. Copland,* v. *Toledo* (1944), 75 Ohio App. 378, wherein access was also denied to the Trail (see paragraph 7 of the syllabus) indicate that appellant had full knowledge of the limitation of access when it purchased the subject property in 1967. The assignment of error is either not well taken or, in light of our holding as to assignment of error 1, not prejudicial.

Assignments of error 3 and 4 are not well taken. Plaintiff does not claim any error for the court's alleged failure to file findings of fact and conclusions of law. Further, in light of our holding as to assignment of error 1, such assignments of error are not prejudicial.

The judgment of the Court of Common Pleas of Lucas County is, therefore affirmed.

*Judgment affirmed.*

BROWN, P. J., and WILEY, J., concur.